
RECEIVED
IN MONROE, LA
OCT 2 8 2005
RT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **LINDSAY L CARBALLO** | **CIVIL ACTION NO. 03-2295** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **LOG CABIN SMOKEHOUSE, ET AL.** | **MAG. JUDGE JAMES D. KIRK** |

### RULING

Plaintiff Lindsay Carballo ("Carballo") brings this suit against her former employer, Log Cabin Smokehouse ("Log Cabin"), alleging employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq* ("Title VII").

Pending before the Court is a Motion for Summary Judgment [Doc. No. 14] filed by Log Cabin. Carballo has filed a Memorandum in Opposition to the Motion for Summary Judgment [Doc. No. 27]. For the following reasons, Log Cabin's Motion for Summary Judgment is hereby DENIED.

### I. FACTS AND PROCEDURAL HISTORY

Log Cabin is a restaurant owned and operated by Mr. Rinehart and Karen Rinehart (collectively "the Rineharts"). In May 2001, Carballo began her employment with Log Cabin as a waitress. During her employment Carballo alleges that she was sexually harassed and that she was subsequently fired in retaliation for complaining of the sexual harassment. Carballo also alleges that she was discriminated against because she was pregnant.

Carballo alleges that Chuck Rinehart ("Mr. Rinehart") sexually harassed her while she was employed at Log Cabin. Carballo claims that Mr. Rinehart made comments about the size of

1

her breasts and about having sex with her, grabbed her rear end, and exposed himself and asked her for oral sex on one occasion.

One evening after work, Carballo claims to have complained to Erik, a night manager, about Mr. Rinehart's inappropriate behavior. Carballo claims that Erik responded by saying, "he's [Mr. Rinehart] just a dirty old man, just ignore him." Carballo admits that she never filed any formal complaint and that she often ignored Mr. Rinehart's behavior.

Carballo also admits to telling sexual jokes, having conversations about sex with co-workers, referring to her shirt as a "tip-getting" shirt, "wagging" her tongue and winking at co-workers, bringing a string of Mardi Gras beads depicting a naked female with the inscription "show me your tits" to Mr. Rinehart, and telling one co-worker that she had sex in the freezer with her husband.[1]

In approximately June or July of 2002, Carballo became pregnant. Carballo told Mr. Rinehart she was pregnant and needed a larger work shirt. Carballo and Mr. Rinehart went to his office to get a larger shirt. Carballo claims that while they were in Mr. Rinehart's office he made comments about the size of her breasts and discussed how good he was in bed. Carballo also claims that Mr. Rinehart grabbed her rear end, asked for oral sex, and exposed himself. Carballo immediately left Mr. Rinehart's office and told a co-worker, Ashley Wright ("Wright"), about the incident. Neither Wright nor Carballo reported the incident. Carballo admits that this was the last time Mr. Rinehart did anything inappropriate prior to her termination.

The weekend of September 13, 2002, the Rineharts suspended Carballo from work

---

[1] Carballo admits in her deposition that she did not have sex in the freezer at Log Cabin, but she admits she had sex with her husband in Log Cabin's parking lot.

2

because of her alleged emotional outbursts in front of customers. Carballo returned to work the following Monday.

The following weekend of September 21, 2002, Carballo allegedly told a co-worker, Peter Guiterrez ("Guiterrez"), about the harassment. Carballo complained about Mr. Rinehart exposing himself, grabbing her, and making comments about the size of her breasts. Carballo states that she vividly remembers talking with Guiterrez because Mr. Rinehart was standing behind her and she thinks Mr. Rinehart overheard the conversation.

During the week of September 23, 2002, Carballo took some time off from work. During this time, the Rineharts claim that several restaurant employees complained about Carballo. After learning that Carballo was pregnant, the Rineharts had asked her not to lift any heavy objects. However, several co-workers told the Rineharts that, during the weekend, Carballo insisted on lifting a heavy bucket of salsa and threatened to sue the restaurant if she miscarried her baby.

On September 26, 2002, the Rineharts terminated Carballo. The Rineharts told Carballo that they were firing her because she had a poor attitude and threatened to sue the restaurant. However, the Rineharts admit that Carballo was a good waitress and well liked at the restaurant and that they wanted to give her a good recommendation.

Carballo timely filed a perfected charge of discrimination with the Equal Employment Opportunity Commission. On September 17, 2003, Carballo received a notice of right to sue.

On December 15, 2003, Carballo filed a complaint against Log Cabin asserting claims of sexual harassment, retaliatory discharge, and sex discrimination on the basis of pregnancy.

On August 12, 2005, the Rineharts filed a Motion for Summary Judgment. On

September 30, 2005, Carballo filed a Memorandum in Opposition.

With full briefing by all parties completed, the Court is now prepared to rule on the Motion for Summary Judgment.

## II. LAW AND ANALYSIS

### A. Motions for Summary Judgment

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record that highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.* The moving party cannot satisfy its initial burden simply by setting forth conclusory statements that the nonmoving party has no evidence to prove its case. *Ashe v. Corley*, 992 F.2d 540, 543 (5th Cir. 1993).

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating

the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

## B. Sexual Harassment

Title VII forbids employers to take actions on the basis of sex that "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). Sexual harassment is a form of sex discrimination prohibited under Title VII. *See Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986).

To prevail on a sex-based harassment claim alleging hostile work environment, the plaintiff must prove: (1) she belongs to a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on sex; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Green v. Adm'rs. of the Tulane Educ. Fund*, 284 F.3d 642, 655 (5th Cir. 2002) (internal citation omitted). When the harassment is committed by a supervisor with immediate or successively higher authority over the harassment victim, the employee need only prove the first four elements.

In determining whether a workplace constitutes a hostile work environment, courts should look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Id.* at 23. Title VII does not prohibit "genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex." *Oncale v. Sundowner Offshore Svcs. Inc.*, 523 U.S. 75, 81 (1998). A recurring point in the Supreme Court's hostile environment

cases is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. *Faragher*, 524 U.S. at 788. The standards set forth by the Supreme Court seek to ensure that Title VII does not become a "general civility code." *Oncale*, 523 U.S. at 80. Properly applied, they will filter out complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher*, 524 U.S. at 788 (quoting B. Lindemann & D. Kadue, Sexual Harassment in Employment Law 172 (1992)). The Supreme Court has made it clear that conduct must be so extreme, so severe and pervasive, as to amount to a change in the terms and conditions of employment. *Id.* The objective severity of the harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances. *Oncale*, 523 U.S. at 81.

In its Motion for Summary Judgment, Log Cabin argues that the alleged harassment was not objectively severe or pervasive.[2] According to Carballo, Mr. Rinehart engaged in the following incidents of sexual harassment over approximately sixteen months:

(1)     Mr. Rinehart made 5 to 10 comments about her breasts;

(2)     Mr. Rinehart grabbed her rear-end 3 to 5 times; and

(3)     On one occasion, Mr. Rinehart asked her for oral sex and exposed himself.

However, also during this time period, Carballo admits to telling sexual jokes, having

---

[2]The Court notes that Log Cabin also contends that Carballo cannot demonstrate that the sexual harassment was unwelcome. The Court concludes that there is a significant factual dispute as to whether Carballo was subjected to unwelcome harassment. Carballo alleges she was subjected to sexual harassment. Mr. Rinehart denies sexually harassing Carballo. *See Gaspard v. J & H Marsh & McLennan of Louisiana, Inc.*, 105 F. Supp. 2d 537, 540 (E.D. La. 2000) (finding that the unwelcome harassment factor of Title VII is established when one party complains of sexual harassment and the other party denies it).

sexual conversations with co-workers, referring to her work shirt as a "tip getting shirt," bringing a string of Mardi Gras beads depicting a naked female with the inscription "show me your tits" to Mr. Rinehart, and telling one co-worker that she had sex with her husband in Log Cabin's freezer. In addition, Carballo admits that she ignored the alleged inappropriate behavior, and on one occasion said "thank you" when Mr. Rinehart commented on the size of her breasts.

While the Supreme Court has set a high standard for what constitutes severe or pervasive enough activity so as to affect a term or condition of employment, it has also instructed courts to examine all the circumstances surrounding the alleged harassment. The Court finds that given all the circumstances in this case, including the alleged fact that Mr. Rinehart exposed himself, the incidents that occurred at Log Cabin are the kind that similar courts have found to create a hostile working environment. Log Cabin is a small restaurant with relatively few employees. In addition to being Carballo's supervisor, Mr. Rinehart was a co-owner of the restaurant. Mr. Rinehart's alleged conduct persisted for approximately sixteen months. During this time period Mr. Rinehart allegedly grabbed Carballo's rear end 3 to 5 times, made approximately 10 comments about her breasts, and exposed himself on one occasion and asked Carballo for oral sex.[3] *See Gaspard*, 105 F. Supp. 2d at 539-42 (finding hostile environment existed where

---

[3]The Court notes that it is presented with the issue of considering whether exposing oneself may be severe enough to constitute a hostile or abusive working environment. Several courts have determined that a single incident of exposing oneself is not enough to support a hostile environment sexual harassment claim. *See Durkin v. Chicago*, 199 F. Supp. 2d 836, 841 (N.D. Ill. 2002) (finding that single incident of defendant exposing himself and telling plaintiff to "suck this" was not actionable); *Jones v. Clinton*, 990 F. Supp. 657, 675-76 (E.D. Ark. 1998) (finding that single incident of defendant exposing himself was not frequent, severe, or physically threatening and did not alter a condition of the plaintiff's employment). However, this Court believes that Mr. Rinehart allegedly exposing himself, combined with all the other allegations of sexual harassment, create an issue of fact as to whether a hostile work environment existed.

7

assistant vice president and vice president grabbed plaintiff's rear end, made comments about plaintiff's private parts, and grabbed plaintiff's head and simulated oral sex); *Beard v. Flying J, Inc.*, 266 F.3d 792 (8th Cir. 2001) (finding numerous incidents over a three-week period where plaintiff's breasts had been touched by supervisor, including rubbing cooking tongs across her breasts and flicking a pen across plaintiff's nipples, were sufficient to create hostile environment); *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1159 (8th Cir. 1999) (reversing summary judgment for employer where supervisor "fondled his genitals in front of" a female employee and "used lewd and sexually inappropriate language"); *Lauro v. Tomkats, Inc.*, 9 F. Supp. 2d 863, 871-73 (M.D. Tenn. 1998) (finding that owner of company who made sexually suggestive comments to plaintiff and touched plaintiff in sexually offensive manner creates an issue of fact of whether a hostile and abusive work environment exists).

Accepting all evidence submitted by Carballo as credible and drawing all inferences in her favor, the Court concludes that a reasonable person in Carballo's position would find Mr. Rinehart's conduct to be severely hostile or abusive. Because the alleged harassment was objectively severe and pervasive, it affected a term, condition, or privilege of Carballo's employment at Log Cabin, and Carballo has created a genuine issue of fact of sexual harassment. Log Cabin's Motion for Summary Judgment on this claim is DENIED.

### C. Retaliation

In order to state a prima facie case of retaliation, Carballo must show that (1) she engaged in an activity protected by law; (2) an adverse employment action occurred; and (3) there was a causal connection between the participation in the protected activity and the adverse employment action. *See Shackleford v. Deloitte & Touch, LLP*, 190 F.3d 398, 407-408 (5th Cir. 1999). The

causal link required by the third prong of the prima facie case does not rise to the level of a "but for" standard. *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002) (citation omitted). If a plaintiff makes a prima facie showing, then "an inference of retaliatory motive" is raised. *Fierros v. Texas Dep't of Health*, 274 F.3d 187, 191 (5th Cir. 2001) (citing *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001)).

To overcome this retaliatory inference, the defendant must produce evidence of a legitimate nondiscriminatory purpose for the employment action. *Gee*, 289 F.3d at 345 (citation omitted); *see also Fierros*, 274 F.3d at 191.

Finally, if the defendant satisfies its burden of production, the plaintiff must prove that the employer's stated reason for the adverse action was merely a pretext for the real, discriminatory purpose.[4] *Gee*, 289 F.3d at 345.

Carballo argues that because she complained of sexual harassment she was terminated. Log Cabin argues that Carballo was terminated because of her poor attitude. Carballo responds that this reason is pretext for retaliation.

The Court concludes that Carballo has established a prima facie case for retaliation. First, Carballo has shown that she engaged in protected activity by complaining of sexual harassment to the night manager, Eric. Second, Carballo suffered an adverse employment action when she was terminated. Third, Carballo has demonstrated a causal connection between her complaint of

---

[4]Carballo has not alleged that this is a mixed motive case. Accordingly, the Court need not consider whether the Supreme Court's decision in *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003), or the Fifth Circuit's decision in *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305 (5th Cir.2004), affects the analysis. *See Septimus v. University of Houston*, 399 F.3d 601, 607 n.7 (5th Cir. 2005).

sexual harassment and her termination. While Mr. Rinehart was standing behind Carballo, she complained to another co-worker about the sexual harassment. Five days later Carballo was terminated.

The standard for establishing the "causal link" element of the plaintiff's prima facie case is much less stringent than the "but for" standard. *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996). The Supreme Court has found that temporal proximity may be sufficient when the timing between the protected activity and adverse employment action is "very close." *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). The Court believes the night manager's knowledge, coupled with Mr. Rinehart's awareness of Carballo's complaint of sexual harassment only five days before she was terminated, supports Carballo's causal link and satisfies her prima facie burden. *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001) (finding that a supervisor's awareness of plaintiff's complaint two months prior to discharge was sufficient to establish a causal link).

Log Cabin argues that it fired Carballo for a legitimate non-retaliatory reason: she had a history of emotional outbursts and a poor attitude. The Court finds that Log Cabin has met its burden of production. Because Log Cabin has proffered a legitimate non-retaliatory reason for the challenged employment action, the burden shifts back to Carballo to demonstrate the proffered rationale is merely pretext for retaliation.

Whether the evidence presented by the plaintiff is direct or circumstantial, it must be substantial. *Hamlett v. Gonzales*, 2005 WL 1500819 at *12 (N.D. Tex. June 15, 2005) (citing *Nichols v. Lewis Grocer*, 138 F.3d 563, 566 (5th Cir. 1998)). A plaintiff's prima facie case, combined with sufficient evidence that the employer's justification is false, may permit the fact

finder to conclude that the defendant unlawfully discriminated. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000).

In this case, Carballo points out that both the night manager and Mr. Rinehart knew of her sexual harassment complaints. Additionally, while the Rineharts claim they terminated Carballo for her poor attitude, they admit that she was a great employee, well liked at the restaurant, and that they wanted to give her a good recommendation. Carballo claims that the Rineharts never told her that she was being terminated because of her poor attitude. In these circumstances, it is perfectly reasonable for a fact finder to reach different conclusions regarding the veracity of evidence presented by Log Cabin and Carballo. *See Gee*, 289 F.3d at 348 (citing *Reeves*, 530 U.S. at 146-88, "a fact finder may infer the ultimate fact of retaliation from the falsity of the explanation."); *Faver v. International Paper Co.*, 196 F. Supp. 2d 441, 445 (E.D. Tex. 2002) (denying summary judgment when material factual disputes remain as to whether complaint of sexual harassment was pretext for termination).

The Court finds the evidence of pretext, provided by Carballo, in its totality, is sufficient to support a finding that summary judgment is unwarranted at this time. Log Cabin's Motion for Summary Judgment on this claim is DENIED.

### D. Discrimination

Title VII prohibits discrimination in employment against any person on the basis of her race, sex, national origin, color, or religion. 42 U.S.C. § 2000e-2(a)(1). In 1978, the Pregnancy Discrimination Act ("PDA") amended Title VII by proscribing discrimination on the basis of "pregnancy and related medical conditions within the definition of sex discrimination." *Stout v. Baxter Healthcare Corp.*, 282 F.3d 856, 859 (5th Cir. 2002). The PDA provides:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work....

42 U.S.C. § 2000e(k).

A pregnancy discrimination claim is analyzed in the same way as a Title VII discrimination claim. *Urbano v. Cont'l Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir.1998). A plaintiff can prove pregnancy discrimination either by direct or circumstantial evidence.

To prevail on sex discrimination on the basis of pregnancy claim the plaintiff must satisfy a prima facie showing which includes: (1) that she was a member of the protected class; (2) that she was qualified for her position; (3) that she was discharged; and (4) that she was either replaced by someone outside the protected class or otherwise discharged because of the protected trait. *McDonell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Rhodes v. Rouse's Enterprises, L.L.C.*, No. 03-1383, 2004 WL 1857649, at *2 (E.D. La. Aug. 18, 2004) (noting that pregnancy discrimination is analyzed under the same Title VII burden shifting framework). The framework for analyzing discrimination claims is the same used in retaliation claims–"the familiar *McDonnell Douglas* burden-shifting framework applies." *See Mayberry v. Mundy Contract Maint., Inc.*, No. 03-5221, slip op. at 8 (S.D. Tex. Aug. 16, 2005) (citing *Rios v. Rossotti*, 252 F.3d 375, 380 (5th Cir. 2001)).

Once the plaintiff makes out a prima facie case of discrimination, the burden then shifts to the defendant to offer a legitimate nondiscriminatory reason for the termination. *See Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

If the defendant satisfies this limited burden, the plaintiff must then offer sufficient

12

evidence to create a genuine issue of material fact. The plaintiff can establish pretext evidence of discriminatory motive or by showing that the employer's proffered explanation is false. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001).

The Court concludes that Carballo has established a prima facie case for pregnancy discrimination. First, Carballo was pregnant. Second, Carballo was qualified to perform her job as a waitress. No evidence has been presented that a doctor had restricted her activity, nor is there any other evidence to suggest that she was incapable of performing her duties. Third, Carballo was discharged from her employment. Fourth, Carballo has provided evidence that she was discharged because she was pregnant. Carballo claims that the Rineharts terminated her because she was pregnant and feared potential liability. *See E.E.O.C. v. Corinth, Inc.*, 824 F. Supp. 1302, 1308 (N.D. Ind. 1993) ("Terminating a pregnant employee, or forcing her to take leave, because of concern for her health or concern for the employer's potential liability, are employment decisions based upon impermissible factors.").

Although the Rineharts argue that they terminated Carballo because of her emotional outbursts and poor attitude, they also admit they feared that she might hurt herself and set the restaurant up for a lawsuit.

The Court finds that the evidence creates an issue of fact for trial. The Rineharts knew Carballo was pregnant prior to her termination. Mr. Rinehart had knowledge of Carballo's pregnancy several months prior to her termination when she asked for a larger work shirt. Karen had knowledge of Carballo's pregnancy because she and other employees asked Carballo to not lift heavy objects. While the Rineharts claim they terminated Carballo because of her poor attitude, they also admit she was an good waitress, was well liked in the restaurant, and that they

13

wanted to give her a good recommendation. The Rineharts also admit they feared that she would intentionally hurt herself and sue the restaurant. Carballo emphatically denies saying she would sue the restaurant if she had a miscarriage.

Clearly, a fact-finder can reach different conclusions of whether Carballo was discriminated against because of her pregnancy. The Court finds that these types of credibility issues, discussed by *Reeves,* are for the fact-finder to decide. *See Palasota v. Haggar Clothing Co.,* 342 F.3d 569, 576 (5th Cir.2003) (holding that "the establishment of a prima facie case and evidence casting doubt on the veracity of the employer's explanation is sufficient to find liability") (citing *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 147 (2000)); *Hunt v. Rapides Heathcare Sys., LLC,* 277 F.3d 757, 762 (5th Cir. 2002) ("Credibility determinations are not part of the summary judgment analysis.") (citation omitted)).

The Court finds the evidence of pretext provided by Carballo, in its totality, is sufficient to support a finding that summary judgment is unwarranted at this time. Log Cabin's Motion for Summary Judgment on this claim is DENIED.

## III. CONCLUSION

For the foregoing reasons, Log Cabin's Motion for Summary Judgment [Doc. No. 14], is DENIED.

MONROE, LOUISIANA, this __28__ day of __October__, 2005.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

14